IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CURTIS JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11−cv−855−MJR−SCW |
| | ) | |
| TANYA KINER, DR. NWAOBASI, | ) | |
| MAGID FAHIM, ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| DILDAY, and LT. LIEFER | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This § 1983 case, in which Plaintiff Curtis Jones has alleged deliberate indifference to serious medical needs, is before the Court on the Defendants Dilday, Illinois Department of Corrections (IDOC), Kiner, and Liefer's (hereinafter "IDOC Defendants") Motion for Summary Judgment (Doc. 58), as well as Defendants Fahim, Nwaobasi, and Wexford Health Sources Inc.'s (hereinafter "Wexford Defendants") Motion for Summary Judgment (Doc. 69). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Plaintiff exhausted his administrative remedies before filing suit. For the following reasons, it is **RECOMMENDED** that the Defendants' motions (Doc. 58 and 69) be **DENIED**.

FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2011, Curtis Jones brought the instant suit pursuant to 42 U.S.C. § 1983. (Doc. 1).   Plaintiff alleged that prison officials showed deliberate indifference when he developed pain and swelling in his face and jaw in the fall of 2009. (Doc. 12).

The IDOC Defendants filed their Motion for Summary Judgment on January 9, 2013 seeking summary judgment for failure to exhaust administrative remedies.  (Doc. 58).  Plaintiff filed a response to that Motion on March 7, 2013.  (Doc. 72).  The IDOC Defendants then filed a reply in April 5, 2013, making the Motion ripe.  (Doc. 79).  The Wexford Defendants likewise filed a Motion for Summary Judgment on March 1, 2013, also for failure to exhaust administrative remedies.  (Doc. 69).  Plaintiff filed a Response to that Motion on March 20, 2013.  (Doc. 74).  Both sets of Motions address common questions of fact and law.  Generally, Defendants argue that Plaintiff failed to exhaust his administrative remedies because he did not file a grievance with the grievance officer within the allotted time.  Defendants also argue that Plaintiff's time to file an appeal with the ARB lapsed.  In response, Plaintiff claims that his grievance was timely filed, and that he never received any response to his grievance to appeal.

The undersigned held a hearing on this matter on July 2, 2013, which was then continued until August 1, 2013.  During the hearing on July 2, 2013, the undersigned heard testimony from Regina Summers, Nathan Maune, and Sarah Johnson for the Defense.  The undersigned heard testimony from Jason Strawbridge, Davevett Bell, Ronald Barrow, and Christopher Hightower, also on July 2, 2013.  Curtis Jones testified in support of his position on August 1, 2013.  Having thoroughly reviewed the entire record, the undersigned **RECOMMENDS** as follows.

### JONES' GRIEVANCE
.

Plaintiff alleges that he felt a lump in his throat starting on September 29, 2009. (Doc. 12).   He put in a sick call slip on September 30, 2009.  (Doc. 12).  He experienced pain and swelling with little attention from the Defendants, until he was sent to an outside hospital on October 5, 2009.  (Doc. 12).  Plaintiff alleges upon returning to Menard that he received inadequate pain management, and has now suffered permanent nerve damage in his face.  (Doc. 12).  Plaintiff submitted a grievance to his counselor, Regina Summers, dated November 24, 2009 outlining the series of events that he alleges constituted deliberate indifference (Doc. 1-1).  The parties appear to agree that this grievance was filed fifty-five (55) days after the relevant events.

The parties have some factual disputes over what happened next.  Defendants allege that the grievance was returned to Plaintiff with the counselor's response on January 26, 2010. (Doc. 70-3, p. 2).  Plaintiff initially submitted an affidavit with both his original Complaint and his amended Complaint confirming the January 26, 2010 date.   (Doc. 1-1, p. 9; Doc. 12-1, p. 9). However, at the hearing, Plaintiff and his roommate, Christopher Hightower, both testified that Plaintiff received the grievance itself on February 1, 2010.  Additionally, the counselor's response referred Plaintiff to the attached response from the Health Care Unit, without otherwise commenting on the status of the grievance.  (Doc. 1-1, p. 1).  Plaintiff and Hightower testified that he did not receive the health care unit report with his grievance and had to write a follow up note to his counselor.   They testified that Plaintiff did not receive the Health Care Unite report until February 17, 2010.  For the purposes of these Motions, the undersigned finds that Plaintiff received both the grievance and the health care report on February 1, 2010, as defense testimony establishes that it was mailed on January 26, 2010, and Plaintiff would not have received it the same day it was mailed.

Plaintiff then arranged to have the grievance and the report photocopied, and then sent the grievance to the grievance office on February 25, 2010, a date which Plaintiff supports by referencing his calendar.  (Doc. 1-1, p. 11).  Plaintiff's affidavit says it was actually filed on February 28, 2010 (Doc. 1-1, p. 9), and the grievance itself is ambiguous.  (Doc. 1-1, p. 6).  The grievance office received it on March 8, 2013.  (Doc. 70-3, p. 2).  Plaintiff's counseling summary indicated that the grievance was then rejected as being out of time because it was filed six weeks after Plaintiff received it back from his counselor.  (Doc. 70-3, p. 2).  The counseling summary does not indicate how this information was communicated to Plaintiff, and no copy of a written response from the grievance officer has been produced by any of the parties.  Summers testified that it would have been returned to Plaintiff via the mail.  Plaintiff testified that he never received any type of response after submitting his grievance to the grievance officer, and that the first time he saw the comment that the grievance was untimely was during discovery in this case.  He inquired into the status of the grievance in May.  Plaintiff testified that he received no response to this request; later he testified that he did not receive a response until September 2010.  On September 3, 2010, Summers told Plaintiff that the grievance office had no grievances from him.  (Doc. 1-1, p. 9).  Plaintiff then filed the grievance with the ARB on September 6, 2010.  (Doc. 1-1, p. 9).  The ARB never received this grievance. (Doc. 59-1).  Plaintiff has never received a response.  (Doc. 1-1, p.9).[1]

## LEGAL STANDARDS

1. *Summary Judgment Standard*

Summary judgment—which is governed by FEDERAL RULE OF PROCEDURE 56— is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  ***Dynegy Mktg. &***

---

[1] Sarah Johnson of the ARB also testified to facts concerning the actual practices concerning the grievance process, which will be addressed in the next section.

*Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).[2] The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings.")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson*, 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001). *See also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." ***Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). *Accord Anderson*, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

## 2. *PLRA's Exhaustion Requirement*

---

[2] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011)**.

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. *Pavey v. Conley*, **544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

Though the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**, the PLRA's plain language is clear that an inmate must exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** Administrative remedies become "unavailable" when prison officials fail to respond to a properly-filed inmate grievance, *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**, or when prison employees otherwise use affirmative misconduct to prevent a prisoner from

exhausting. *Dole*, 438 F.3d at 809.  *See also Ducey v. Flagg*, No. 08-cv-0691-MJR, 2009 WL 3065045, at *4 (S.D. Ill. Sept. 21, 2009) ("[P]rison officials can easily thwart an inmate's attempt to exhaust administrative remedies simply by failing to respond to his or her grievances.").  Defendants bear the burden of proving the exhaustion requirement, which is an affirmative defense.  *Pavey v. Conley* (*Pavey II*), 663 F.3d 899, 903 (7th Cir. 2011).

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

### 3.   *Exhaustion Requirement under Illinois Law*

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.**  These procedures are embodied in IDOC DR504F, http://www.ilga.gov/commission/jcar/admincode/020/02000504sections.html, which encompasses **20 Ill. Admin. Code § 504.800 et seq.**  The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**.  If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident.  *Id.*  If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a)**.  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).**  "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).**

    Although these regulations are clearly set forth in DR 504F, IDOC officials appear to employ a slight variant of this system.  For example, although the applicable regulations clearly state that a grievance must be filed with the grievance *officer* within sixty days, it appears as if the grievance process is actually initiated by filing a written grievance with the grievance *counselor*.  Sarah Johnson, an executive at the ARB whose duties include review of grievances, testified that this was her understanding of the process, and that she would interpret a grievance filed with the counselor within sixty days to be timely.  The paperwork that must be used to file a grievance also supports this interpretation.

    If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").  The grievance procedures specifically state that "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.  Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code § 504.850(a).**  "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).**  "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f).**

CONCLUSIONS OF LAW

Defendants' main argument is that Plaintiff has not exhausted his administrative remedies because he waited too long after receiving his grievance back from his counselor to send it to the grievance officer.  The Illinois Administrative Code requires that an inmate file a grievance with his grievance officer within sixty (60) days of the relevant incident.  The Code also requires an attempt at "informal" resolution prior to filing with counselor.  The Code is silent on what precisely is meant by "informal."  The Code also does not specify a time period within which an inmate must file his grievance with the grievance officer after receiving it back from the counselor.  While it is undisputed that Plaintiff gave his counselor a written and signed grievance within sixty days, Plaintiff did not file his grievance with the grievance officer within the sixty day time period.[3]

However, it appears that in practice the initial step that an inmate must take with his counselor is formal, and that prison authorities construe it that way.  Sarah Johnson, a witness produced by the Defense, was questioned about the timeline of the grievance procedure by the Plaintiff.  Johnson testified that she works as an executive for the Administrative Review Board (ARB) and that her duties include reviewing grievances and making recommendations to the director.  She testified that she was familiar with the grievance process.  She testified that a prisoner has sixty days once he discovers an issue to file a grievance on that issue.  Plaintiff specifically asked Johnson whether an inmate had to file the grievance with the officer within the sixty days.  Johnson responded that the grievance should be filed *with the counselor* within sixty days of the incident to timely initiate the grievance process.  Additionally, the form itself has a box for a written counselor's response, with an option for the counselor to send the grievance directly to the officer if needed,

---

[3] The Defendants are willing to concede that this timeline may be tolled while a prisoner waits for his counselor's response.  However, in the absence of statutory authority or a command of the Seventh Circuit, the undersigned declines to recommend the imposition of a tolling doctrine.

suggesting that receiving a written response from the counselor is a required and formalized step of the grievance process.

Here, Plaintiff properly initiated the grievance process within the sixty day time period by filing a written grievance with his counselor. This is consistent with the interpretation that high level prison officials have made of the Illinois Administrative Code. Additionally, in this case, Plaintiff's counselor did not respond to him for almost two months while she investigated his complaint, long after the initial sixty day period would have lapsed. It would be inequitable to find that Plaintiff failed to exhaust his administrative remedies by not completing the informal step with his counselor within the sixty period when the delay was due entirely to prison staff and administrators. Therefore, the undersigned finds Plaintiff's grievance timely filed.

Defendants also argue that Plaintiff was informed that his grievance was untimely on March 8, 2010, and therefore had to take steps to appeal the grievance at that point. The only evidence that Defendants submit on this point is the counseling statement (Doc. 70-2, p. 5) and counseling summary (Doc. 70-3, p. 2). These both indicate that Jeannette Cowan determined the grievance was untimely and returned it to Plaintiff. Plaintiff testified that he never received anything from her. Cowan did not testify at the hearing. Summers testified that she "assumed" that Cowan would have returned grievance in the mail, but cannot say for sure. The counseling summary describes the type of communication only as "other," as opposed to "face to face" or "mail." (Doc. 70-3, p. 2). The grievance itself does not contain any statement from the grievance officer or any indication that Cowan had seen it. In fact, at the hearing on August, 1, 2013, counsel for Wexford explained that her understanding was that no formal response to the grievance is made, nor is it even logged in the grievance office, if it is determined to be out of time. Therefore, the undersigned finds that Plaintiff received no response. A lack of response from prison authorities serves to make the grievance procedure unavailable. Plaintiff was not under any obligation to take further steps to

10

exhaust his grievance at this point because any appeal would have been rejected for failure to include the grievance officer's response.  Because Plaintiff never received a response to the grievance he sent to the grievance officer, the administrative remedy scheme became unavailable to him at that point.

<span class="smallcaps">Conclusion</span>

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' separate Motions for Summary Judgment (Docs. 58 and 69) be **DENIED**.  If this Report is adopted, then all of Plaintiff's claims will remain in the case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Objections to this Report and Recommendation must be filed on or before August 22, 2013**. *See* Fed. R. Civ. P. 6(d); SDIL-LR 5.1(c).

**IT IS SO RECOMMENDED.**
**DATE:  August 5, 2013**          ***/s/ Stephen C. Williams***
                                   **STEPHEN C. WILLIAMS**
                                   United States Magistrate Judge